**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alan Keith STEVENS, Defendant-Appellant.**

**No. 71–1009.**

United States Court of Appeals, Sixth Circuit.

June 29, 1971.

H. Fred Hoefle, Cincinnati, Ohio, for defendant-appellant.

William D. Kirkland, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before PHILLIPS, Chief Judge, and WEICK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

We consider a direct appeal from a conviction on two counts of selling and

disposing of a motor vehicle moving in interstate commerce, knowing it to have been stolen, in violation of 18 U.S.C. § 2313. The 1963 Chevrolet automobile specified in Count I of the indictment was stolen from its owner in Columbus, Ohio on August 14, 1968. The 1967 Mustang automobile specified in Count II was stolen in Allen Park, Michigan on October 1, 1968. The evidence indicated that, shortly after the theft of each automobile, appellant sold both to a service station operator in Drift, Kentucky. The service station operator, Sammy Maggard, testified that Stevens sold him the vehicles and promised to provide title to them. A person who witnessed the sale of the one year old Mustang testified that appellant stated that he wanted only five or six hundred dollars for the car (an amount substantially less than its market value) and that he had to return to Michigan.

At the time of the illicit transactions, appellant was employed by Charles Keathley at the latter's junk yard. Stevens and Keathley were jointly indicted and, prior to Stevens' trial Keathley was convicted of another violation of the same statute. At trial, it was appellant's contention that he was merely Keathley's innocent employee and dupe, and that he suspected but did not know that Keathley dealt in stolen automobiles. However, Maggard testified that, although Keathley accompanied Stevens at the time of the Mustang sale, the money for both automobiles was paid to Stevens. On June 25, 1970 a jury convicted Stevens of both charges, and he was sentenced to serve consecutive two-year terms of imprisonment imposed on each count.

On appeal, Stevens asserts that he was denied the right to be tried by an impartial jury because the entire venire from which his jury was selected was present in court throughout Keathley's trial and heard all the testimony in that case. Eight of the twelve jurors in Stevens' case served on the jury which convicted Keathley. The other four jurors had observed the Keathley trial while waiting to serve as jurors.

It is clear that appellant was fully aware of these circumstances prior to his trial. At voir dire, defense counsel questioned the jurors about their ability to reach a fair and impartial conclusion despite their knowledge of Keathley's conviction. No objection was made to the fact that the jurors had witnessed the trial which resulted in Keathley's conviction and appellant did not exhaust his peremptory challenges. No continuance was requested. Accordingly, the conviction must stand unless it was plain error for the court to have impanelled these jurors. Fed.R.Crim.P. 52(b). We hold that it was not.

Although it is possible that the jurors who witnessed Keathley's trial either as jurymen or as spectators might have acquired impressions prejudicial to Stevens, we hold that this circumstance did not *per se* deprive appellant of a fair trial. *See* Annot. 160 A.L.R. 753. Appellant's reliance upon Lett v. United States, 15 F.2d 690 (8th Cir. 1926), is misplaced. There, husband and wife were jointly indicted for the same offense, but were tried separately on the same day. Eight jurors who had served in the trial which resulted in the conviction of the wife were permitted, despite challenge, to serve as jurors in the trial of the husband who was also convicted. The husband's conviction was reversed because, under the circumstances, where "[t]he guilt of this woman and the intimate relationship existing between husband and wife were fresh in the minds of the jurors", the presumption of prejudice was too great to be ignored. Nevertheless, the court observed that the course of justice should not be delayed in all cases because of the unavoidable presence in court of jurors during the trial of related cases unless the prejudice claimed is sufficiently apparent.

Similarly, Casias v. United States, 315 F.2d 614 (10th Cir. 1963) (en banc), a

case in which the array was attacked and objection to the impanelling of the jury was made, does not stand for the proposition that knowledge of a related case necessarily disqualifies a prospective juror. Three members of that equally-divided court concluded that no presumption of prejudice should arise merely because jurors had previously served in similar cases in which the Government used witnesses who also testified against Casias. They believed that individual inquiry should be made into the impartiality of the jurors. The other members of the court, although convinced that Casias had been prejudiced, nevertheless stated:

> Not every prospective juror who has sat on another similar case with the same government witnesses is ipso facto debarred from the jury box. His qualifications may very well rest on voir dire. Prejudice should be implied in law only when the accumulative evidence of guilt is clear and convincing.

*Id.* at 621. *See also* United States v. Haynes, 398 F.2d 980 (2d Cir. 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969), where the fact that seven jurors who sat in a defendant's narcotics trial had been jurors in previous narcotics cases where some of the same Government witnesses had testified did not establish that the jurors were prejudiced as a matter of law.

In Stevens' case, it is possible that the jurors' familiarity with Keathley's criminal activities may have aided Stevens' defense. The defense emphasized the unreliability of Maggard's testimony and suggested that Keathley, who had been convicted of automobile theft, was solely guilty of the offense for which Stevens was being tried. It is entirely likely that the decision not to challenge the jurors who observed Keathley's trial was the result of a trial stratagem which miscarried.

■■ We express our disapproval of the practice of permitting prospective jurors to witness trials in progress be- cause of the risk of exposure to disclosures which might affect their impartiality if impanelled to try other cases. We also believe that, whenever avoidable, jurors should not be called to serve in cases involving witnesses or parties who participated in cases in which they were previously impanelled.

Nevertheless, we find that no prejudicial error occurred to taint the conviction here.

Affirmed.