**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald Jackson CRANE, Defendant-Appellant.**

**No. 73-1947.**

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1974.

Decided July 11, 1974.

Donald E. Warner (court appointed) Chattanooga, Tenn., for defendant-appellant.

Hugh J. Moore, Jr., Asst. U. S. Atty., for plaintiff-appellee; John L. Bowers, Jr., U. S. Atty., E.D.Tenn., on brief.

Before EDWARDS, McCREE and MILLER, Circuit Judges.

MILLER, J., delivered the opinion of the Court, in which EDWARDS, J., joined. McCREE, J., (pp. 1389–1391) filed an opinion concurring in part and dissenting in part.

WILLIAM E. MILLER, Circuit Judge.

The defendant, along with a number of other individuals, was sought by the F.B.I. because of his suspected involvement in a bank robbery. Two days after the robbery defendant was riding in an automobile driven by Gene Henry, who was also believed to have been involved in the robbery. The car was stopped by F.B.I. agents. Henry, apparently in an attempt to escape, rapidly accelerated the car toward some of the F.B.I. agents. Shots were fired into the car, and Henry was killed. When defendant, uninjured, was taken from the car, an agent saw a paper sack on the floor board between the defendant's feet. In the sack was $7,780 of the more than $23,000 in cash that had been taken from the bank.

Defendant was arrested, advised of his constitutional rights, and then taken to the F.B.I. office where he was again given the *Miranda* warnings. He chose to give the F.B.I. a statement about his involvement in the robbery. According to the trial testimony of agent Smartt,

defendant stated that he knew the two men who actually held up the bank and that it was an automobile that he had found for them that they used as their getaway car. Defendant had told the agent that he knew that he was to receive a share of the stolen money. To substantiate this statement, he gave to the agents a piece of paper which listed the names or initials of the other parties involved in the robbery and listed their share of the money. Beside his own name were the figures $2,500/$1,875— indicating that his original share was to be $2,500 but that that amount would be reduced to $1,875 after the stolen money was exchanged with another person for different bills. However, defendant stated that he had no intention of actually taking the money. Moreover, he said that Henry, the driver of the car, had placed the sack on the floor board and that the money was always in Henry's keeping.

A joint indictment was returned against defendant and the three other men involved in the robbery. Count One charged defendants Alloway, Hughes and Brown with armed robbery of a federally insured bank. 18 U.S.C. §§ 2, 2113(a) and 2113(b). Defendant alone was charged under Count Two with possession of funds stolen from a federally insured bank. 18 U.S.C. § 2113(c). The district court decided to try all of the defendants before one jury but recognized that a problem could arise because of the government's intention to offer defendant's statement in evidence. As the statement could incriminate the other defendants, and as defendant would not take the stand to be available for cross-examination, it would be a violation of the other defendants' sixth amendment right of confrontation to allow the jury to hear the statement before reaching a verdict as to them. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In consequence, the court bifurcated the trial. All evidence against the defendants charged under Count One was first submitted, and the jury was then asked to return its verdict on that count only. After the jury had returned its verdict on Count One, the remaining evidence against defendant, charged in Count Two, was introduced. The jury then returned its verdict as to defendant, finding him guilty as charged.

Shortly after the trial began, defendants Alloway and Hughes changed their pleas to guilty and testified for the prosecution. Brown, the remaining defendant charged under Count One, was found not guilty after completion of the case as to him.

Defendant argues that rather than bifurcate the trial, the court should have granted defendant's motion for severance. The refusal of the court to grant the severance motion is said to have been error because the cumulative effect of the evidence in the first part of the trial so influenced the jury that the impartiality required by the sixth amendment became impossible.

In Bruton v. United States, *supra*, the prosecution had introduced in a joint trial the confession of one of the defendants. The trial court admitted the confession but cautioned the jury that it could not be considered as evidence against the codefendant. In reviewing this procedure, the Supreme Court held that the inculpating statements contained in the confession made the defendant a witness against his codefendant. As the defendant giving the confession chose not to testify, he was unavailable for cross-examination. In consequence the codefendant's sixth amendment right to confront witnesses against him was violated.

■ Ever since *Bruton* was decided, trial judges have struggled to find ways that defendants may be tried jointly even though one has given a statement to the police. *See, e. g.,* United States v. Sidman, 470 F.2d 1158, 1167–1170 (9th Cir. 1973). Their purpose has been to obey the commands of *Bruton* and at the same time to achieve the substantial saving of judicial time that may be accomplished through a joint trial. Given

what appears to be an ever-increasing demand by litigants for access to federal courts, efforts by trial judges to keep their dockets current are to be commended. Yet justice, not judicial economy, is the first principle of our legal system. And under no circumstances may well-intentioned efforts to conserve judicial time be permitted to prejudice the fundamental right of a criminal defendant to a fair trial.

▆ We have carefully scrutinized the record in this case and find that the defendant's cause was not prejudiced by the manner in which the trial was conducted. Brown, whose case was tried first, was found not guilty. Consequently we do not believe that the jury drew an adverse inference from Brown's association with defendant as developed at trial. Moreover, we find that the record contains convincing evidence to support the jury's guilty verdict as to defendant.

Despite the lack of prejudice to defendant arising from the trial technique employed here, we entertain serious doubts about the propriety of the general use of a bifurcated trial as a means of preserving joint trials while still complying with the mandate of *Bruton*. If a jury were to find one of the defendants guilty, there could be a serious question whether the same jury could later give his codefendant the dispassionate and unprejudiced hearing required by due process and by the sixth amendment. In such a case the risk of prejudice would be unacceptably high. And of course the trial judge cannot predict at the beginning of the trial what the jury's verdict will be as to the defendant whose case is first presented. Conceivably, a procedure may be discovered that will make possible a reconciliation of the efficient use of court time and the constitutional guarantee of the right to confrontation. In the meantime, whenever there is a possibility of prejudice to either defendant, the safest course would appear to be the traditional use of the severance device.

▆ The defendant also contends that the warrantless search and seizure of the bag of money on the floor board of the car were in violation of the fourth amendment. We do not agree. The F.B.I. agents had just shot and killed the operator when he drove the car toward them. As they reached the car, defendant had between his feet a green paper bag. Had the bag contained a weapon, the agents unquestionably could have been in physical danger were the weapon not seized. Since the bag was within defendant's "immediate control," the search was a proper one. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); United States v. Kaye, 492 F.2d 744 (6th Cir. 1974); *cf.* United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

▆ On the morning of the fourth day of trial, defendant moved for a mistrial because on that and the preceding morning a few of the jurors had seen him in the hall of the courthouse handcuffed and chained to Hughes, a codefendant who had pleaded guilty under Count One of the indictment. The defendant Brown made a similar motion because he believed that the same jurors had seen him chained to Alloway. Both parties offered to present evidence on the circumstances of the incident. The court reserved ruling on the motion until the conclusion of the trial.

After the jury had returned its verdict, the defendant testified about his having been seen by some of the jurors handcuffed to codefendant Hughes as he was being led to the courtroom. By defendant's description, three of the jurors were identified as Mrs. Chapman, Mrs. Hatchett and Mr. Craven. One of the marshals testified that it was standard procedure to handcuff and chain criminal defendants while they were on their way to the courtroom. Furthermore, the marshal stated that defendants Alloway and Hughes were escapees from the Tennessee State Penitentiary.

Subsequently, the court called for questioning the three jurors identified

by defendant. Mrs. Hatchett stated that she had seen defendant in chains, but that she did not discuss what she had seen with any other juror. She also testified that this encounter in the hall did not affect her vote in the case. Both Mrs. Chapman and Mr. Craven remembered seeing defendant in the hall, but neither could recall seeing chains or handcuffs.

We do not believe that defendant was prejudiced by the brief encounters with the jurors. *See* United States v. Leach, 429 F.2d 956 (8th Cir. 1970), cert. den. 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); Hardin v. United States, 324 F.2d 553 (5th Cir. 1963). Mrs. Hatchett specifically stated that she did not tell another juror about what she saw nor did it affect her consideration of defendant's case. It is worthy of note that Mrs. Hatchett stated that she also saw defendant Brown in chains, yet the jury found him not guilty. The transcript clearly indicates that if either Mrs. Chapman or Mr. Craven saw the defendant chained and handcuffed, they attributed no significance to the fact.

In our recent opinion in Kennedy v. Cardwell, 487 F.2d 101 (6th Cir. 1973), we undertook an exhaustive review of the shackling cases. While we there recognized the inherent prejudice to a defendant required to be manacled or shackled while in the courtroom during his trial, casting upon the prosecution the burden of showing that no prejudice had resulted, we adopted a somewhat different standard in cases where the defendant had been seen by the jurors in shackles only for a brief period somewhere in the courthouse. As to this class of cases we stated that "the only real question . . . is the degree of prejudice affecting the defendant's fair trial right . . . ." As stated above, the facts developed by the district court in the post-trial hearing, leads us to conclude that the defendant suffered no prejudice from the brief encounters with jurors while he was shackled. The district court did not err in denying the

defendant's motion for a mistrial because of these incidents.

The judgment of conviction is affirmed.

McCREE, Circuit Judge (concurring in part and dissenting in part).

I concur in the court's disposition of all the issues presented in this appeal except for its treatment of the "bifurcated" trial procedure. This procedure, which might more appropriately be characterized as "tandem," violated appellant's constitutional rights to due process and to a fair trial before an impartial jury.

Appellant's admission implicating his codefendants could not agreeably to the Sixth Amendment, be introduced against them. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). To prevent prejudice to them, and, at the same time, to achieve economy of judicial time and energy, the district court empanelled a single jury to hear the case in tandem fashion. The government was instructed to introduce all its evidence against the codefendants and Crane except for his admission. Thereupon, the jury heard argument from the codefendants, received the court's charge concerning them, and retired to deliberate upon and decide their guilt or innocence. After the return of the verdict affecting only the codefendants, the government presented to the same jury evidence of Crane's admission. Thereupon, the jury heard his argument, received the court's instruction, and retired to deliberate about him.

Notwithstanding the district court's commendable concern about the constitutional rights of Crane's codefendants and its understandable desire to expedite cases on its crowded docket, this procedure deprived Crane of basic constitutional rights. Although innovation is essential to the growth of the law, the procedure adopted here endangered proper fact-finding and was fundamentally unfair. A more appropriate course of action would have been to grant ap-

pellant's motion to sever under Rule 14 of the Federal Rules of Criminal Procedure. That rule provides that "[i]f it appears that a defendant . . . is prejudiced by a joinder . . . of defendants . . . for trial together, the court may . . . grant a severance of defendants or provide whatever other relief justice requires."

During the first phase of the trial, the jury was required to determine at least one element (and possibly more) of the crime with which Crane was charged before is was instructed to deliberate on his guilt or innocence. It is unlikely that the jury would either reconsider or change its earlier determination of issues decided during deliberation about the codefendants, or accord to Crane, at the commencement of its deliberation about him, the presumption of innocence with respect to all the elements of the offense with which he was charged. This procedure presents the same risk of injustice that has compelled other courts to order a new trial when the jury that determined a defendant's guilt was composed of persons who had served as jurors in a case related to and arising from the same criminal action. *E.g.,* Lett v. United States, 15 F.2d 690 (8th Cir. 1926). *See also,* United States v. Haynes, 398 F.2d 980 (2d Cir. 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969), Casias v. United States, 315 F.2d 614 (10th Cir. 1963) (en banc), and United States v. Stevens, 444 F.2d 630, 632 (6th Cir. 1971), where this court held that "whenever avoidable, jurors should not be called to serve in cases involving witnesses or parties who participated in cases in which they were previously impanelled." In addition, the tandem procedure confused the role of appellant's counsel *whose client's* case did not enjoy the first priority on the jury's agenda during the initial phase of the trial. He might have been reluctant, for fear of antagonizing the jury that had been told to defer consideration of his client's case, to participate forcefully in the first phase of the trial, for example, in the examination of witnesses, and in the decision whether to make an opening statement or "partial" closing argument.

The jury's verdict that Crane's codefendant was not guilty of armed bank robbery does not warrant the conclusion in the majority opinion that Crane was not prejudiced by the tandem trial. At the start of trial, there were four defendants, three of whom were charged with armed bank robbery and one of whom, Crane, was charged only with possession of the proceeds of that robbery. On the second day of trial, two of appellant's codefendants entered a plea of guilty to the charge of armed robbery, and one of them then became a witness for the prosecution. On the third day of trial, the jury determined that appellant's third codefendant was not guilty. Within minutes of announcing the verdict, the trial of Crane alone resumed, and the jury was informed that appellant had given an FBI agent a list of persons to whom the robbery proceeds were to be paid. This list included the wife of the defendant whom the jury had just acquitted. It requires little imagination to conclude that the effect of this additional information on the jury was considerable. The jury, having been told, in effect, that it might have just erred in its earlier verdict, may have determined not to permit another "guilty" person to go free.

Although the majority expressed its "serious doubts about the propriety of the general use of a bifurcated trial," it concluded that the use of the procedure in this case was harmless. Assuming that a procedure that deprives a defendant of his constitutional right to a fair trial before an impartial jury can ever be deemed harmless, the majority opinion *does not* determine that the error was "harmless beyond a reasonable doubt," Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and I do not so conclude.

Accordingly, I would hold that when the district court correctly determined that a joint trial of Crane and his codefendants would violate *Bruton,* it should

have ordered separate trials, as appellant requested, or possibly, with appropriate safeguards, might have impanelled two juries, one to determine Crane's guilt or innocence and the other to determine the guilt or innocence of his codefendants. *See* United States v. Sidman, 470 F.2d 1158, 1167–1170 (9th Cir. 1972), cert. denied, 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973).

I would reverse and remand with instructions to grant a new trial.