UNITED STATES of America,
Plaintiff-Appellee,

v.

Peter McIVER, Jr., Saul McIver and
Huberto Antonio Rodriguez,
Defendants-Appellants.

No. 81–5531.

United States Court of Appeals,
Eleventh Circuit.

Oct. 8, 1982.

Ana Maria Carnesoltas, Sonia E. O'Donnell, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE and JOHNSON, Circuit Judges, and ALLGOOD *, District Judge.

JOHNSON, Circuit Judge:

Appellant Huberto Antonio Rodriguez appeals his conviction of conspiracy to possess marijuana with intent to distribute aboard a vessel of the United States, 21 U.S.C.A. § 955c, and possession with intent to distribute marijuana while aboard a vessel of the United States, 21 U.S.C.A. § 955a.[1] He argues that the bifurcated jury trial used by the district court violated his Sixth Amendment right to be tried by an impartial jury. We reverse.

### I.

A shrimp boat, later identified as the SANTA MARIA from Jacksonville, Florida, whose crew consisted of Peter McIver, Saul McIver and Huberto Rodriguez, was stopped on November 7, 1980, by the Coast Guard cutter DILIGENCE. The DILIGENCE sent a boarding party of five officers to make a safety and administrative inspection of the shrimp boat. After boarding, Officer Grawe asked the members of the crew who was the master or operator of the boat; Saul McIver replied that he was the operator. Grawe and McIver then went forward to find the vessel's documentation. It could not be found. Saul McIver informed Grawe that there were two handguns on board and turned them over to Grawe. Saul McIver then joined the other two crew members in the fantail of the vessel.

During this time several officers smelled marijuana when passing the aft hold. Officer Grawe advised the crew that they were

Paul Morris, Stephen J. Bronis, Miami, Fla., for Peter McIver, Saul McIver & Rodriguez.

Nathan P. Diamond, Miami, Fla., for Rodriguez.

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Rodriguez is one of three defendants in this case who appealed their convictions to this Court. The convictions of Peter McIver, Jr., and Saul McIver are affirmed under Rule 25.

suspected of violating a United States law and informed them of their constitutional rights. All three requested the presence of an attorney. The officers then opened the aft hold and discovered several bales of what appeared to be marijuana. Officer Gibson asked Saul McIver what was in the hold. McIver stated that it was marijuana. In reply to further questioning by Officer Gibson, McIver said that they had received the marijuana about four or five hours previously from a white boat with no name on it. He also stated that they were presently heading north to Cozumel Island, Mexico. Peter McIver told the officers that the marijuana was loaded by hand from the white boat to the shrimp boat. Rodriguez made no statements.

The district court suppressed the statements of both McIvers because of their request for attorneys. Rodriguez informed the court, however, that he wished to use the statements in his defense [2] and requested a severance. The court denied the motion to sever but offered to bifurcate the trial. Rodriguez' lawyer objected to this procedure because the jury would in effect be considering the evidence against Rodriguez twice. Rodriguez continued throughout the trial to note his objection to the bifurcation, although he cooperated with the procedure and the court's instructions. Under the bifurcation procedure, the prosecution first presented its case against all three defendants, the McIvers presented their defense, and the jury deliberated, returning a verdict of guilty as to both McIvers. Then Rodriguez' attorney questioned the same witnesses called by the prosecution in the first phase of the trial and made his closing argument before the jury deliberated on Rodriguez' guilt or innocence.

When the trial commenced, the indictment containing the names of the three co-defendants was read to the jury by the prosecution. In addition, almost all of the evidence introduced by the prosecution referred to the three co-defendants as a group.[3] However, Rodriguez did not make an opening statement or a closing argument; nor did he cross-examine most of the witnesses because of the prejudicial nature of his proposed examination to the McIvers. The jury was informed of the bifurcation for the first time during the judge's charge to the jury as to the McIvers. The judge gave careful instructions, telling the jury that "Rodriguez has been removed from this case and you should not concern yourselves with the reason," and cautioning them to "not consider the guilt or innocence of Rodriguez."

After the jury returned its guilty verdict as to the McIvers, Rodriguez presented his case. The government presented no new evidence. In the closing arguments as to Rodriguez, the prosecution emphasized to the jury that the jury was still considering "the same indictment, the same charges," on which it had just convicted the McIvers. In his closing argument Rodriguez attempted to distinguish himself from the recently convicted McIvers. The jury returned a verdict of guilty as to Rodriguez.

In this appeal, Rodriguez contends that the bifurcated trial resulted in a jury that was partial and predisposed to convicting Rodriguez because it had previously found his co-defendants guilty of the same charges.

## II.

▆ The Sixth Amendment guarantees the right to be tried "by an impartial jury." U.S. Const. amend. VI. The failure to protect this right "violates even the minimal standards of due process." *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

▆ Impartiality, however, cannot be measured by an easy test. The Supreme Court has acknowledged that "[i]mpartiali-

---

**2.** Counsel for Rodriguez stated that he intended to show that Rodriguez was "merely present" on the vessel while the McIvers conducted the smuggling operation. *See United States v. Willis,* 639 F.2d 1335, 1338 (5th Cir. 1981).

**3.** In fact, at the commencement of Rodriguez' trial the prosecution indicated it had no further evidence to present.

ty is not a technical conception. It is a state of mind." *United States v. Wood,* 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936). Notwithstanding the difficulty of measurement, the Supreme Court has identified certain situations that violate this constitutional guarantee. A juror may become so prejudiced by pretrial publicity that he cannot form an impartial opinion. *See Rideau v. Louisiana,* 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963). A panel will be disqualified even if it is inadvertently exposed to the fact that the defendant was previously convicted in a related case. *E.g., Leonard v. United States,* 378 U.S. 544, 545, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964). This case is more extreme than either of the above situations. Here Rodriguez was tried by the very same jury that had just convicted his co-defendants.

■ The Fifth Circuit[4] recently interpreted the Sixth Amendment to prohibit bifurcated trials of the type used here. In *United States v. Stratton,* 649 F.2d 1066 (5th Cir. 1981), the Court held that a bifurcated trial violated the defendant's right to be tried before a fair and impartial jury.[5] In *Stratton* six defendants, including defendant Smith, were charged with violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. § 1962(d). During the trial Smith suffered a heart ailment and was unable to attend trial. Since it appeared that Smith would be absent for some time, the trial judge continued the trial of Smith's co-defendants. After the jury returned its verdict,[6] Smith had sufficiently recovered to continue the trial of his case. Smith presented his

defense before the same jury that had just convicted some of his co-defendants; the jury found Smith guilty on three of four counts. 649 F.2d at 1080.

The Fifth Circuit reversed in *Stratton* on two grounds. Unlike the instant case, the trial judge in *Stratton* did not allow Smith's counsel to be present at the first phase of the trial. The Court ruled that this forced absence violated Smith's right to be present at trial. But the Court went on to hold that "an even more compelling reason" for reversal was the unusual bifurcation procedure employed. 649 F.2d at 1081.

■ A bifurcated trial like the one here and in *Stratton* violates the Sixth Amendment because the jury might consider, even if inadvertently, the guilt of the defendant before it has heard the defendant's case.[7] Here the three defendants were all charged with the same crimes. The government's evidence presented during the McIvers' phase of the trial pertained to all three defendants. It is unlikely in such a situation that the jury could convict two of the three defendants without forming an opinion regarding the third defendant. Such a jury cannot be impartial; rather, it is "predisposed to find guilt." *Stratton, supra,* 649 F.2d at 1082.

We do not decide today whether a jury that acquits the first defendant could later be impartial. The Sixth Circuit, in *United States v. Crane,* 499 F.2d 1385 (6th Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974), upheld a bifurcated trial when the defendant who was tried first was acquitted. Because the jury found the first

---

**4.** Decisions of the Fifth Circuit handed down prior to September 30, 1981, are binding precedent on this Court unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

**5.** Rodriguez' trial was held before *Stratton* was handed down. The trial record and the written order reveal that the trial judge bifurcated the trial relying on *United States v. Dohm,* 597 F.2d 535 (5th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 196 (1979), where the use of a bifurcated trial was upheld. That case has no precedential value, however, as it was va-

cated pursuant to granting of rehearing en banc. 618 F.2d 1169 (5th Cir. 1980) (en banc). *See* 5th Cir. R. 17.

**6.** In *Stratton* the jury acquitted two defendants, convicted two on all counts, and convicted one on one count only. 649 F.2d at 1072.

**7.** As the *Stratton* Court noted, there would be no error if all defendants' cases go to the jury at the same time and the jury deliberates on the guilt of one defendant before considering the guilt of the next. 649 F.2d 1082 n. 24.

defendant not guilty, that court concluded that the jury did not draw an adverse influence from the connection between the two defendants. However, the court went on to warn against the general use of a bifurcated trial:

> If a jury were to find one of the defendants guilty, there could be a serious question whether the same jury could later give his codefendant the dispassionate and unprejudiced hearing required by due process and by the Sixth Amendment. In such a case the risk of prejudice would be unacceptably high. And of course the trial judge cannot predict at the beginning of the trial what the jury's verdict will be as to the defendant whose case is first presented.

499 F.2d at 1388. Given the impossibility of predicting what the jury's verdict will be, *Crane* suggests that a severance should be granted in the first instance.

The government argues that *Stratton* is inapplicable because its facts are different than the case at hand. It argues that in *Stratton* the judge's charge to the jury permitted the jury to consider the guilt of Smith in its first deliberations [8] while at Rodriguez' trial the judge instructed the jury not to consider Rodriguez when it deliberated on the McIvers. The argument does not have merit. It is true that the trial judge here gave the best instructions possible under the circumstances. And it is possible that the differing instructions led the jury in *Stratton* to consider the guilt of defendant Smith more readily than this jury considered Rodriguez. However, even if this jury faithfully followed the judge's instructions and did not discuss Rodriguez, it cannot be ascertained what occurred in the minds of individual jurors. The prejudice to the defendant cannot be cured by even the most careful instructions. As Justice Brennan observed in *Bruton v. United States,* "There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the con-

sequence of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968).

In a similar vein the government argues that *Stratton* does not apply here because the conspiracy there centered around Smith while Rodriguez was not alleged to be a key figure in the case at hand. Therefore, it contends, the jury need not have considered Rodriguez' guilt or innocence when it considered the McIvers. Although it is true that Rodriguez' alleged involvement was more peripheral than Smith's, there is no necessary link between that fact and opinions formed by the jury. The dispositive factor in both cases is that the prosecution presented all its evidence in the first phase of the trial but the defense was postponed until after the jury deliberated. Therefore, regardless of the centrality of the defendants' role in the crimes charged, it is equally likely that the jury became biased during the first phase of both trials.

Other factors in the case at hand indicate that Rodriguez' jury was even more prejudiced than Smith's. In *Stratton* the jury acquitted some of the defendants while here it convicted both McIvers. As *Crane* suggests, the jury in *Stratton* may therefore have been less disposed to convict. *See* 499 F.2d at 1388.

Furthermore, Rodriguez' jury was not informed of the bifurcation until all testimony had been given and closing arguments made. The jurors had no reason to suspect that Rodriguez had been removed since Rodriguez and his attorney were present and participated throughout the entire trial. In *Stratton,* Smith's removal was apparent since he and his attorney were barred from the courtroom during the first phase of the trial. Thus, the Rodriguez jurors were more likely than those in *Stratton* to form opinions about Rodriguez during the course of testimony and argument.

---

8. In *Stratton* the trial judge instructed the jury that it could consider and determine whether Smith was a member of the charged conspiracy and participated in the alleged crimes. The only issue it could not consider was the "ultimate issue of defendant Smith's guilt or innocence." 649 F.2d at 1080.

The crux of the constitutional infirmity in this case and in *Stratton* is that a jury which has convicted two co-defendants cannot impartially evaluate the case of the third co-defendant. As in *Stratton*, the trial judge in the case at bar was "undoubtedly motivated by sincere considerations of fairness and judicial efficiency." 649 F.2d at 1082–83. However, we agree with the *Stratton* Court that "noble motivations do not excuse constitutional error." *Id.* at 1083. The case at hand demonstrates the futility of attempting to substitute efficiency for constitutional requirements of due process. The entire trial took only two and a half days. Surely the goal of judicial economy would have been accomplished far more easily by protecting constitutional rights in the first instance.

REVERSED and REMANDED as to Rodriguez. AFFIRMED as to Peter McIver, Jr. and Saul McIver. See Circuit Rule 25.