Jeffrey LOVINGER, Petitioner–Appellee,

v.

CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS, Respondent–Appellant.

No. 87–1397.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1987.

Decided May 2, 1988.

Marcia L. Friedl, Office of Ill. Atty. Gen., Chicago, Ill., for respondent-appellant.

Mary Robinson, Robinson & Skelnik, Elgin, Ill., for petitioner-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

FLAUM, Circuit Judge.

Jeffrey Lovinger's bench trial on charges of unlawful delivery of cocaine and cannabis ended in a mistrial on February 8, 1983. Lovinger was unable to convince the Illinois courts that the double jeopardy clause of the fifth amendment bars his reprosecution for these offenses. After exhausting his state court remedies, Lovinger petitioned the district court for a writ of habeas corpus. The district court granted the writ and we affirm.

I.

Lovinger's trial in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois was hampered from the start by the prosecutor's inability to establish a clear chain of custody over the evidence. The details of the trial are fully set forth in Magistrate Bucklo's thorough Report and

---

[*] The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

Recommendation, which is appended to the district court's opinion. *Lovinger v. Circuit Court,* 652 F.Supp. 1336, 1338 (N.D.Ill. 1987). The state's first witness was the undercover officer who had purchased packages of white powder and a green leafy substance from Lovinger in October of 1979. The evidence was divided into several exhibits. When it emerged during cross-examination that defendant's expert had not been permitted to test all of the exhibits as required by the court's discovery order, the judge continued the trial to allow for such testing. When trial resumed, the state called an analyst from the Illinois police crime laboratory who testified that the substances purchased by the undercover officer were in fact cocaine and cannabis.

It was during the testimony of the next witness, an evidence officer for the Waukegan Police Department, that the state's chain of custody problems began. Officer Thomas Hutchings testified that he gave Exhibit No. 1 to an outside examiner on November 4, 1982 for testing. The prosecutor questioned Hutchings about the inconsistency between this testimony and Hutchings' earlier testimony that he had not come into contact with this exhibit between September 14 and November 18, 1982. The trial judge told the prosecutor that he was impeaching his own witness and granted a recess so that the prosecution could "get its act together."

When the trial resumed, Lovinger's lawyer reported that Hutchings and the prosecutor had been seen discussing the case during the recess and examining and exchanging papers. The prosecutor denied coaching the witness. The judge ordered that there be no further conversations, and told the defense that any error was harmless so that if Lovinger intended to move for a mistrial, the motion would be denied. Lovinger's lawyer then moved that the court declare a mistrial or alternatively that Hutchings' testimony be stricken and that he be precluded from testifying further. The court denied these motions. Hutchings resumed testifying, and again contradicted himself as to when he had turned over the exhibits for outside examination and when the examiner had returned them to the evidence room. Another short recess was declared, after which Hutchings' recollection was considerably clearer. Before recessing until the following Monday, the court instructed Hutchings not to discuss the case or his testimony with anyone.

Unfortunately for the state, Hutchings' recollection was less than lucid when he resumed the stand on Monday, February 7, 1983. He could not remember, even when aided by suggestive questioning, when he had given out or returned certain of the exhibits. The judge felt compelled to state:

> This record has got evidence going out and never returning. This record has got the evidence, the same evidence going out twice, never returning for the first time. There is confusion.

During cross-examination, Hutchings discussed police procedures for entering into a log book the dates for the removal or return of evidence. Defense counsel requested review of the log book; the court granted a half-hour recess for this purpose. After the recess, Hutchings testified that one of the log book entries, which conflicted with his testimony, was incorrect.

On February 8, Officer Bowden, the government's next chain of custody witness, also had trouble recalling when he had returned one of the exhibits to the evidence locker. The judge continued the case until the afternoon and instructed Bowden not to discuss his testimony. When the trial resumed, defense counsel told the Judge that Lovinger had seen the prosecutor talking with Bowden during the recess and had heard something about the evidence locker. The prosecutor admitted having asked for certain reports, but denied discussing any aspect of Bowden's testimony. When asked if he had discussed his testimony with the prosecutor, Bowden revealed that he had only been expressing his displeasure "with the fact that I was getting my butt chewed out." The judge asked for the reports and stated, "I'm not going to have any case with any

tint of error, and we are starting to have a lot of error creep into this record."

The judge took a short recess, and upon return verified that all parties and counsel were present. He then proceeded with the following declaration:

Gentlemen, at this time I want to put something on the record. I have not been satisfied with the way this case has been presented. First, I call to the attention of everybody in this courtroom that because of the laxity of the prior State's Attorney and his administration, there was nothing done to resolve this cause of action before a jury or bench trial because of the fact that this matter had occurred in 1979.

Secondly, I am concerned about the lack of discovery afforded the defense, pursuant to court order of Judge Doran, and even of this court.

Third, there was a failure to fully comply with the orders of the Court during trial regarding discovery. For example, I point out to my order of September 7th and the fact that a witness in this cause did remove portions from Group Exhibit No. 2, for identification, when I had ordered all of the exhibits to be taken to the defense chemist for purpose of analysis, pursuant to the order of discovery.

Fourth, I am very much concerned about what occurred early this afternoon in this courtroom. And this can be classified as either direct or indirect contempt, and I'm not going into that phase of it. Because of the talking about a pending matter with a witness who says he did not talk with the Assistant State's Attorney, and the Assistant State's Attorney saying to me that he did not talk with the witness, except for request by Bob Will, representing the defendant, and then you changing your conversation after Lovinger under oath indicated certain things. And then you said something else contrary, and it's all on the record.

At this point in the trial, it is questionable, and I doubt whether discovery has been completed by the state to the defense.

And further it has been disclosed by the witness on the stand, when he said, "I told him I was not pleased with the fact I was getting my butt chewed out, but that was it."

I, as the Court, am wholly unaware of any—I'm sorry. I am only aware of a reprimand by anyone except my admonition to the witness, to the defense and to the Assistant State's Attorney, not to discuss this case with anyone. And prior to I continuing this matter this morning, I said, "I am going to continue this case to 1:30. You don't talk with them; they don't talk with you about this case. Again I'm going to advise, let's get everything in order."

I feel error has crept into this trial and it can only be resolved by me declaring a mistrial, which I so order, and I recuse myself from this case, and I order you to appoint another judge. Call the Clerk. And the only other judge that will not take this is Strouse, because he had recused himself before. And after it is assigned to another judge, I instruct you to go to the other judge and let him set it for trial. Bond is continued.

The judge left the courtroom as he was finishing his statement.

The clerk of the court reassigned the case to Judge McQueen. On February 18, 1983, at Lovinger's first appearance before the new judge, he objected that the mistrial was not required by manifest necessity and moved to dismiss on double jeopardy grounds. The case was continued until March 18, when Judge McQueen heard arguments and denied the motion. The Appellate Court of Illinois, Second District, affirmed the circuit court's order [1] and remanded the case for trial. The appellate court reasoned that Lovinger had consented to a mistrial by moving for one early in the trial and by failing to object when the judge made his announcement. *People v. Lovinger*, 130 Ill.App.3d 105, 85 Ill.Dec.

1. Under Illinois Revised Statutes, chapter 110A, paragraph 604(f), a defendant "may appeal to the Appellate Court the denial of a motion to

381, 473 N.E.2d 980 (1985).[2]

The Illinois Supreme Court denied leave to appeal, the United States Supreme Court denied Lovinger's petition for certiorari, 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985), and on December 6, 1985 Lovinger filed a habeas petition in the district court. Both parties moved for summary judgment. The matter was referred to Magistrate Bucklo, who issued a report on December 17, 1986 finding after careful analysis that Lovinger did not consent to a mistrial and that no manifest necessity for a mistrial existed. The district court adopted the magistrate's report and granted the writ of habeas corpus on February 12, 1987 barring reprosecution on the cocaine and cannabis charges.[3] The district court's judgment was stayed pending this appeal.

## II.

◾ The double jeopardy clause of the fifth amendment,[4] applicable to the states through the fourteenth amendment, *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969), protects at least two important interests. *United States v. Rich,* 589 F.2d 1025, 1028 (10th Cir.1978). First, individuals should be spared the emotional and financial hardship of successive prosecutions at the powerful hand of the State. *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Second, defendants must be protected from the unfairness of a mistrial declaration designed to give the government a second chance to convict when the first is going badly. *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct.

1523, 1526, 6 L.Ed.2d 901 (1961). These concerns, implicated by both bench and jury trials, *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion), must be balanced against "the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Thus, the double jeopardy clause does not bar all reprosecution. A defendant who consents to the termination of a first trial may again be put in jeopardy for the same offense, unless the conduct of the prosecutor or judge was intended to provoke the mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Even when a defendant does not consent, he may be retried if there was "manifest necessity" that the first trial be terminated. *See United States v. Dinitz,* 424 U.S. 600, 606–7, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *Clauser v. McCevers,* 731 F.2d 423, 426 (7th Cir.1984).

### A.

The state alleges that Lovinger explicitly consented to the mistrial by making a motion earlier in the proceedings. The state further argues that Lovinger implicitly consented to the mistrial by failing to object during the trial judge's declaration. We reject both arguments.

◾ The defense moved for a mistrial during officer Hutchings' testimony. We hold that this motion did not constitute explicit consent to a mistrial. First, the motion was merely perfunctory. Defense counsel moved for a mistrial only after the

---

dismiss a criminal proceeding on grounds of former jeopardy."

**2.** Nothing in the Illinois Appellate Court's ruling that Lovinger consented to mistrial indicates a deliberate, strategic bypass of a state procedural opportunity. *See Brownstein v. Director, Illinois Dept. of Corrections,* 760 F.2d 836 (7th Cir.1985). Further, Lovinger's failure to object during the mistrial declaration did not deprive the Illinois courts of the opportunity to consider the propriety of mistrial and therefore to cure any error themselves. *See Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Both Judge McQueen and the Illinois Appellate Court

considered Lovinger's claim and rejected it on its merits. We agree with the district court that even if this case implicated the concerns raised in *Sykes,* Lovinger has shown the cause and prejudice necessary to obtain habeas review.

**3.** Apparently because of some confusion as to when the writ was granted, the district court issued an order on June 30, 1987 granting the writ *nunc pro tunc* on February 13, 1987.

**4.** "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." **U.S. Const. amend. V.**

judge told him that any mistrial motion he made would be denied; his resulting motion was denied as promised. Second, the judge's eventual mistrial declaration was not based on allegedly improper conversations between officer *Hutchings* and the prosecutor—the only grounds for Lovinger's only mistrial motion. When the judge declared a mistrial later in the proceedings, he identified four reasons for his dissatisfaction with the trial: 1) the state's delay in bringing the case to trial; 2) the lack of discovery allowed the defense; 3) the state's failure to comply with the court's discovery orders; and 4) the prosecutor's conversations with witness Bowden. The judge did not mention Lovinger's earlier objection and mistrial motion which were made during Hutchings' testimony. In any case, in light of the state's repeated foibles and the trial judge's resulting displeasure with the prosecution of the case, Lovinger's assessment of his chances of acquittal may well have changed in the interim between the perfunctory mistrial motion and the eventual mistrial declaration. *See Russo v. Superior Court*, 483 F.2d 7, 17 (3d Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973) (no consent where defendant made a mistrial motion on grounds of jury deadlock one day prior to court's mistrial declaration on grounds of jury exhaustion). "We see no reason to lock [defendant] into a motion once it is made." *Id.*

■ We also refuse to construe as a mistrial motion the fact that Lovinger brought to the court's attention the allegedly improper conversation between Bowden and the prosecutor. The defense might on one hand be damaged by a witness who testifies more convincingly as a result of improper conversations with the prosecutor. However, by pointing out the impropriety to the court at a bench trial, the defense may effectively impeach that witness' credibility. The defendant might well be pleased with this result and, far from desiring a mistrial, might wish to proceed to a verdict before the first tribunal. We cannot presume that the defense

deems itself hurt rather than helped by such an occurrence, and on that basis convert an objection into a mistrial motion. Further, were we to construe consent to mistrial so broadly, the state would routinely gain a second chance to prosecute without meeting the well-established "manifest necessity" standard.[5] Nearly every objection or complaint by a defendant regarding the fairness of the proceedings could be construed, under such a far-reaching interpretation, as a motion for mistrial and therefore a waiver of the protection of the double jeopardy clause. We will not search for consent where it is not affirmatively given and clearly evident on the record. *See Clauser*, 731 F.2d at 426.

## B.

■ Lovinger's failure to object to the mistrial declaration also cannot be considered implied consent because he had no opportunity to object. It appears from the record that the judge actually left the courtroom as he finished his statement. He was gone before the defense had any reasonable opportunity to consider the import of his statement and act upon it. *See Jorn*, 400 U.S. at 487, 91 S.Ct. at 558 (trial judge acted so abruptly there was no opportunity to object); *Russo*, 483 F.2d at 17. *Cf. United States v. Buljubasic*, 808 F.2d 1260, 1266 (7th Cir.1987) (defendant had "ample time to deliberate"); *United States v. Smith*, 621 F.2d 350, 352 (9th Cir.1980), *cert. denied*, 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981) ("Defense counsel did not object to the order of mistrial, despite adequate opportunity to do so."); *United States v. Goldstein*, 479 F.2d 1061, 1066–67 (2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973) (same). Defense counsel could not reasonably have been expected to interrupt the judge in the few moments between the surprise mistrial declaration and the judge's departure from the courtroom. The record reflects, and counsel represented at oral argument, that Lovinger objected to mistrial at his earliest opportunity—February 18, 1983—when he

---

5. *See* part III *infra*.

was first brought before Judge McQueen for retrial.

■ In any event, by the time of the mistrial declaration, "things were going defendant's way, making an inference of assent from silence implausible." *Buljubasic*, 808 F.2d at 1266. The prosecutor had been unable to establish a simple chain of custody, had failed to comply with discovery orders, and had allegedly talked to witnesses during recesses in their testimony. This is not a case where the trial judge was forced to declare a mistrial *sua sponte* "in the sole interest of the defendant." *Gori*, 367 U.S. at 369, 81 S.Ct. at 1527. As noted, in light of the prosecution's performance Lovinger would not likely have chosen to assent to the mistrial declaration had he been given time to deliberate. Not once during the course of the prosecution's lackluster presentation did Lovinger's counsel make an unsolicited mistrial motion. And after taking time to consider the desirability of a mistrial, Lovinger objected at his first available opportunity. The trial judge should have permitted the defense at least to express its view before making the unexpected mistrial declaration. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of [judicial or prosecutorial] error." *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). By failing to allow Lovinger to express his view on the propriety of mistrial, the judge deprived Lovinger of the opportunity to exercise any control over the fate of the trial. *Cf. United States v. Phillips*, 431 F.2d 949 (3rd Cir.1970) (where defense did not object to dismissal of jury, state of record was insufficient to hold that trial judge erred).

### III.

■ Because the trial judge thus aborted the proceedings without Lovinger's consent, the double jeopardy clause prohibits the state from retrying Lovinger unless there was "manifest necessity" for the mistrial. *United States v. DiFrancesco*, 449 U.S. 117, 130, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980); *United States v. Perez*, 9 Wheat 579, 6 L.Ed. 165 (1824). Under this standard, the trial judge may declare a mistrial only if a "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion) (quoting *Perez*, 9 Wheat at 580). Whether this nebulous standard is met can only be determined on a case by case basis. *Illinois v. Somerville*, 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). The discretion of the trial judge to determine the existence of manifest necessity for mistrial is of course entitled to deference. *Id.* at 462, 93 S.Ct. at 1069. The failure to exercise discretion, however, may be tantamount to abuse. The record must reflect that the trial court kept "in the forefront the defendant's valued right 'of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'" *United States v. Starling*, 571 F.2d 934, 938 (5th Cir.1978) (quoting *Jorn*, 400 U.S. at 486, 91 S.Ct. at 558).

■ Although the "manifest necessity" test has not been applied in a mechanical fashion, courts have considered whether the trial judge consulted counsel before declaring a mistrial, *e.g.*, *Arizona v. Washington*, 434 U.S. 497, 514 n. 34, 515–16, 98 S.Ct. 824, 835 n. 34, 836, 54 L.Ed.2d 717 (1978); *Grandberry v. Bonner*, 653 F.2d 1010, 1015 (5th Cir.1981), and whether the record indicates that the judge considered significant available alternatives, *e.g.*, *Somerville*, 410 U.S. at 469–70, 93 S.Ct. at 1073; *Jorn*, 400 U.S. at 487, 91 S.Ct. at 558. "A precipitate decision, reflected by a rapid sequence of events culminating in a declaration of mistrial, would tend to indicate insufficient concern for the defendant's constitutional protection." *Brady v. Samaha*, 667 F.2d 224, 229 (1st Cir.1981). *See* *Grandberry*, 653 F.2d at 1015–16; *Cherry v. Director, State Board of Corrections*, 635 F.2d 414, 417–18 (5th Cir.1981). "Thus, if a trial judge acts irrationally or irrespon-

sibly, ... his action cannot be condoned." *Arizona v. Washington*, 434 U.S. at 514, 98 S.Ct. at 835 (citations omitted).

The record indicates that the trial judge took the kind of abrupt and precipitate action which is inconsistent with the exercise of sound discretion under the "manifest necessity" test. Other than one perfunctory motion four days prior to the mistrial declaration, the possibility of mistrial was never raised during the course of the proceedings. The judge showed some frustration with the prosecution, but nothing in his remarks indicate any contemplation of the necessity of declaring a mistrial or cognizance of the double jeopardy consequences of such a course. During Bowden's testimony, the judge took a short recess and then proceeded into a lengthy and unexpected summary of his displeasure with the course of the trial. Neither defense nor prosecution were consulted, and neither could have reasonably expected a *sua sponte* mistrial declaration. There is no evidence on the record that the court gave careful thought to alternatives. Further, it is doubtful that mistrial was an appropriate response to the perceived error. *See Lovinger*, 652 F.Supp. at 1347–48 (Report and Recommendation of Magistrate Bucklo). Of the first two concerns mentioned by the judge, the delay in prosecution would only be worsened by retrial, and the discovery violations were remedied early enough in the trial so as not to prejudice Lovinger. Any prejudice resulting from the prosecution's conversations with witnesses could have been addressed by striking testimony and/or barring future testimony by any tainted witnesses. And in any event, it was premature to declare a mistrial before making some attempt to resolve discrepancies in the various accounts of the prosecutor's conversation with Bowden. *See id.* Whether or not options short of mistrial were feasible and preferable (and it appears that they were), the court did not consider them and thus did not afford proper solicitude for Lovinger's valued right to continue with the trial.

### IV.

Lovinger did not consent to a mistrial, and there was no manifest necessity for the mistrial declaration. The decision of the district court granting Lovinger's petition for a writ of *habeas corpus* is therefore AFFIRMED.