UNITED STATES of America

v.

Craig CHAPMAN.

No. SCr. 88–42(02).

United States District Court,
N.D. Indiana,
South Bend Division.

July 11, 1989.

Thomas O. Plouff, Asst. U.S. Atty., South Bend, Ind., for plaintiff.

Craig Chapman, Chicago, Ill., pro se.

Fred R. Hains, South Bend, Ind., standby counsel, for Craig Chapman.

Jeffrey Kehl, South Bend, Ind., for Jack E. Wright.

## MEMORANDUM

MILLER, District Judge.

■ On July 10, 1989, before the selection of the jury in this trial, defendant Craig Chapman moved to dismiss the charges pending against him on double jeopardy grounds, and the court denied the motion. Mr. Chapman then requested leave to take an interlocutory appeal pursuant to *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and for a stay of proceedings in this court pending that appeal. For the second time in this prosecution, the court denied the motion for a stay. Pursuant to the several cases that have held that district courts do not lose jurisdiction in the face of such a motion if the court specifies in writing its reasons for finding the motion frivolous, *United States v. Hines,* 689 F.2d 934, 937 (10th Cir.1982); *United States v. Leppo,* 634 F.2d 101, 105 (3rd Cir.1980); *United States v. Dunbar,* 611 F.2d 985, 986 (5th Cir.) (en banc), *cert. denied* 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980), the court submits its written reasons for denying the frivolous stay motion.

On October 13, 1988, the grand jury returned a superceding indictment against Mr. Chapman and Jack Wright. The charges related to two 1987 bank robberies, one in Denver, Indiana on May 29, and the other in Twelve Mile, Indiana, on July 3. Mr. Wright and Mr. Chapman were found in the bed of a truck that Thomas Pezet claims he was driving away from the July 3 Twelve Mile robbery. Mr. Wright and Mr. Chapman were tried first in state courts: Mr. Wright was convicted of armed robbery of the Twelve Mile bank; Mr. Chapman was convicted of robbery of the Denver bank.

■ The five-count federal indictment charged both defendants with conspiracy to rob the banks. It also charged Mr. Wright with two counts arising from aiding and abetting the Denver robbery and charged Mr. Chapman with two counts arising from commission of the Twelve Mile robbery. The court denied both defendants' repeated pretrial motions for severance. Before trial, Mr. Chapman elected to represent himself. The joint trial began on June 19, 1989; Mr. Wright was represented by counsel and Mr. Chapman proceeded *pro se.*

On the morning of the second day of the joint trial, Mr. Chapman again moved to sever his trial from that of Mr. Wright and also moved to dismiss on a double jeopardy theory based on his state convictions. The court denied both motions, and also denied Mr. Chapman's motion for a stay pending an *Abney* appeal, on the grounds that his double jeopardy motion was frivolous. The court held that the motion was untimely, *United States v. Milhim,* 702 F.2d 522 (5th Cir.1983), that the federal indictment did not allege the "same offenses" for which Mr. Chapman had been convicted in state court, *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and that the double jeopardy clause was inapplicable because separate sovereigns were involved. *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Westfall v. United States,* 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036 (1927).

The government rested its case-in-chief on the fifth day of trial. After Mr. Chapman unsuccessfully renewed his severance motion, Mr. Wright began presenting evidence in support of his alibi defense. Mr.

Wright claimed he was in Indianapolis, not Denver, on May 29, 1987. He presented the testimony of family members to support that assertion, then, on the sixth day, took the stand in his own behalf. Mr. Wright's testimony was consistent with his alibi defense. He testified on direct examination that he spent the week preceding May 29 at home; that he played basketball at an Indianapolis YMCA with his brother on the afternoon of May 29, when the Denver robbery occurred; that upon arriving at home, he took a telephone call from his sister, who had just returned to her home following a hospitalization for childbirth; that that telephone call was interrupted by a collect long-distance call from a married woman with whom he had developed a Platonic relationship. Mr. Wright stated that he had never been in Denver, Indiana.

Mr. Wright's testimony was far from exculpatory with respect to Mr. Chapman, however. Mr. Wright testified that he intended to be away from his Indianapolis bank account over the Fourth of July weekend, so he borrowed $100.00 from Mr. Chapman on July 2. He told Mr. Chapman he would repay the loan next payday, but Mr. Chapman (according to Mr. Wright's testimony) had something else in mind and told Mr. Wright that Mr. Chapman and Mr. Pezet had done an earlier bank robbery and planned to do another but, because this bank was bigger, they needed a third person. Mr. Wright testified to his petulant participation in the Twelve Mile robbery, involving alcohol provided by Mr. Chapman and threats made at gunpoint by Mr. Chapman. In short, Mr. Wright painted Mr. Chapman not only as one of the two perpetrators of the Denver robbery, but also as the leader of the Twelve Mile robbery, which formed the basis of the substantive charges against Mr. Chapman.

Mr. Wright had made statements about Denver to the contrary, however. On May 19, 1988, on the eve of Mr. Chapman's state trial, Mr. Wright and his attorney met with the state prosecuting attorney handling Mr. Chapman's trial. A plea bargain had been struck, whereby Mr. Wright would plead guilty to theft in exchange for a two-year sentencing "cap". In a taped statement, Mr. Wright told the prosecutor he had driven Mr. Chapman to Denver on May 29; that he did not know in advance what Mr. Chapman was going to do; that he learned upon Mr. Chapman's return to the car that Mr. Chapman had robbed the bank; and that he had driven Mr. Chapman away from Denver. The following day, Mr. Wright told a different story and withdrew from the plea agreement.

After Mr. Wright completed his direct testimony, Mr. Chapman stated that he desired to impeach Mr. Wright with his prior inconsistent statements. That effort would run afoul of Federal Rule of Evidence 410, which provides, in part:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

> \*　　\*　　\*　　\*　　\*　　\*

> (4) any statement made in the course of plea discussions with an attorney for a prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

The court earlier had granted Mr. Wright's motion *in limine* with respect to his May 19, 1988 statements to the prosecutor. Originally, the court had granted the motion solely with respect to the government's case-in-chief, leaving open the question whether Mr. Wright could be impeached with his statements connected to his plea bargain under the theory of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). On the morning of Mr. Wright's testimony, however, Mr. Wright expanded his motion, noting that the legislative history of Rule 410 indicated that Congress had considered, but explicitly rejected, such an exception for impeachment use of statements covered by the Rule. Case law supported Mr. Wright's argument, *United States v. Lawson*, 683 F.2d 688, 693 (2nd Cir.1982); *United States v. Martinez*, 536 F.2d 1107, *reh'g denied* 541

F.2d 282 (5th Cir.), *cert. denied* 429 U.S. 985, 97 S.Ct. 505, 50 L.Ed.2d 597 (1976), and the court granted the motion.

Rule 410, however, precludes only admission of such statements against the defendant. The only courts to address the issue have concluded that plea bargaining statements are admissible to impeach a witness because the statements are not used "against" the witness under such circumstances, *United States v. Carrillo*, 561 F.2d 1125, 1128 n. 4 (5th Cir.1977); *United States v. Mathis*, 550 F.2d 180, 182 (4th Cir.1976), *cert. denied* 429 U.S. 1107, 97 S.Ct. 1140, 51 L.Ed.2d 560 (1977), and at least one treatise concurs. 2 D. Louisell & C. Mueller, *Federal Evidence* § 188, at 559–560 (1985 rev.) ("the purpose of Rule 410 does not require exclusion of statements by persons having no stake in the proceedings other than a general interest in being believed"). This court agreed with that reading of the Rule. *But see* 23 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5348, at 403 (1980) ("Most of the writers assume that the rule applies when the evidence is offered against the person who made the plea or offer, irrespective of whether the proceeding is against him.").

Accordingly, Mr. Chapman had evidence that could not be used to impeach Mr. Wright in Mr. Wright's trial, but that could be used to impeach Mr. Wright in Mr. Chapman's trial. Mr. Chapman renewed his severance motion.

Severance is governed by Fed.R.Crim.P. 14, which provides in pertinent part,

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Mr. Wright, who had long striven to rid himself of Mr. Chapman's companionship at trial, raised no objection to Mr. Chapman's renewed severance motion. The government objected strenuously, but Mr. Chapman maintained that the joint trial's necessary bar to impeachment use of Mr. Wright's prior statement deprived him of his confrontation rights. The court agreed with Mr. Chapman and concluded that denial of the right to confrontation constituted sufficient prejudice to warrant severance. Because Mr. Wright had already testified and presented essentially all of his evidence, while Mr. Chapman had yet to even make his opening statement, the court granted Mr. Chapman's motion for severance, declared a mistrial with respect to Mr. Chapman, rescheduled Mr. Chapman's trial for July 10, 1989, and proceeded with Mr. Wright's trial. The jury found Mr. Wright guilty on all counts.

When Mr. Chapman's case was called for trial on July 10, he filed a motion to dismiss on double jeopardy grounds. Mr. Chapman raises several arguments in support of his motion, but none approach a basis for dismissal.

First, Mr. Chapman notes that he had objected to the impaneling of the jury in his original joint trial. His objections were not, however, based on a denial of confrontation rights. His severance motions, like Mr. Wright's, were based on the proposition that inconsistent defenses would render a joint trial unfair. Mr. Chapman also argued that Mr. Wright would testify falsely to the purported $100.00 loan from Mr. Chapman. The severance and mistrial was not, however, ultimately based on inconsistent defenses or perjured testimony about a loan; it was based on Mr. Chapman's inability to cross-examine Mr. Wright.

Mr. Chapman argues that the government's attorney somehow knew the impediment to a joint trial was coming, pointing to counsel's argument opposing pretrial severance that severance might become necessary during trial. Mr. Chapman attributes too much prescience to the government's counsel. Mr. Wright repeatedly sought severance, in part to avoid trial with a *pro se* defendant, and he presumably would have known better than the government that he would deny ever having been in Denver, Indiana. Yet even he never ventured the eventual confrontation prob-

lem as a basis for severance. As the government argued just prior to the severance, the impediment to the joint trial was not of the government's making.

The cases Mr. Chapman cites do not stand for the proposition that retrial is barred. He cites Justice Stevens' concurring opinion in *Ball v. United States*, 470 U.S. 856, 867, 105 S.Ct. 1668, 1675, 84 L.Ed.2d 740 (1985), for the proposition that "a defendant tried on multiple charges is placed in jeopardy as to each charge". Justice Stevens condemned the prosecutorial practice of simultaneously trying a defendant with charges when conviction could not be entered on both. No such mischief is afoot here. *See United States v. Harris*, 832 F.2d 88 (7th Cir.1987).

*Lovinger v. Circuit Court of the 19th Judicial Circuit*, 845 F.2d 739 (7th Cir. 1988), to which Mr. Chapman specifically referred while arguing his dismissal motion, has no applicability to this case. In *Lovinger*, the state trial court *sua sponte* declared a mistrial because he felt that error was creeping into the record. The prosecution witnesses could not recall the timing of events critical to the chain of custody over certain evidence, and the prosecutor apparently, at best, flirted with the limits of the court's order that the witnesses not discuss their testimony during recesses. The federal courts concluded that Lovinger had neither requested nor consented to the mistrial, and no manifest necessity required the mistrial. Accordingly, the Double Jeopardy Clause precluded retrial and required dismissal.

■ The seeds of the court's ruling on Mr. Chapman's motion are found even in *Lovinger*:

Thus, the double jeopardy clause does not bar all reprosecution. A defendant who consents to the termination of a first trial may again be put in jeopardy for the same offense, unless the conduct of the prosecutor or judge was intended to provoke the mistrial.... Even when a defendant does not consent, he may be retried if there was a "manifest necessity" that the first trial be terminated....

845 F.2d at 743. Unless the conduct giving rise to the mistrial was intended by the prosecution or the court to provoke a mistrial motion—a premise without basis in this case—the granting of a defendant's mid-trial severance motion does not foreclose reprosecution, even when, unlike Mr. Chapman's situation, the mid-trial motion is based on grounds earlier raised. *United States v. Buljubasic*, 808 F.2d 1260 (7th Cir.), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

Mr. Chapman argues that he did not realize that a mistrial was occurring when the court granted his severance motion, so he cannot be deemed to have consented to a mistrial. The *Buljubasic* court disposed of a similar argument:

Pavlovic replies that he hadn't moved for a mistrial lately, so the severance and mistrial of December 6 must be assessed as one on the court's own motion. The premise is true, but the conclusion does not follow. Pavlovic had been insisting on severance all along. The judge said she was granting Pavlovic's pending motion. When the judge finally proposed to give Pavlovic what he sought, Pavlovic did not tell the judge that he had changed his mind. The court was entitled to treat this as a consensual mistrial.

Pavlovic cites cases such as *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), and *United States ex rel. Clauser v. McCevers*, 731 F.2d 423, 426 (7th Cir.1984), holding or implying that when a judge surprises counsel by a declaration of mistrial, the failure to object cannot be taken as consent. *Jorn* was the classic case of the overbearing judge, and *Clauser* one in which the mistrial was declared to rescue the prosecutor from a bad turn of events. Neither *Jorn* nor any other case holds that just because the *suggestion* of mistrial comes from the judge initially, the defendant's acquiescence is irrelevant. Parties may give assent in many ways. If a judge should say: "I think a mistrial would be a good idea, but think it over and let me know if you disagree", the defendant's silence would be assent. The principal functions of the double jeopardy clause

are to allow a defendant to get a verdict at the first trial if he wants one and to keep a verdict that is favorable.... Whether the defendant wants a verdict is something he knows best, and when the occasion for choice comes he must choose unless, as in *Jorn*, the judge brooks no opposition, or unless there is insufficient time to deliberate. In *Clauser* things were going the defendant's way, making an inference of assent from silence implausible. Here Pavlovic's defense had been hampered throughout the trial. He had ample time to deliberate. His choice was clear—he made many motions for mistrial and did not retract them or express concern when the judge finally granted the mistrial. The process took more than an hour on December 6, so there was ample time. Pavlovic had only to withdraw his motion and say that he wanted to finish the trial. He did not, so this must be taken as a mistrial on his motion.

808 F.2d at 1265–1266. Here the time available for reflection was even greater. The issue of denial of confrontation first arose at the end of the morning's evidence on Monday, June 26; the court indicated the likelihood that Mr. Chapman's motion would be granted, adjourned trial, and afforded the government until the following morning to respond further. Mr. Chapman had nearly a full day to contemplate whether he wished to proceed. He did not wish to proceed.

Further, manifest necessity required the course taken. Mr. Chapman contended, and the court agreed, that a joint trial could not continue in the face of Mr. Wright's direct testimony and Rule 410. Mr. Chapman sought severance, but now contends that the court should have found some avenue that would have allowed the trial to continue with respect to him. No other avenue, however, was available.

To have taken the opposite course and severed Mr. Wright from the trial would have left Mr. Wright on the witness stand to be cross-examined by the government and Mr. Chapman. Mr. Wright had a constitutional right not to be there in someone else's trial. His direct testimony amounted to a confession of participation in a conspiracy to rob the Twelve Mile bank. He had not waived his right against self-incrimination to testify either for the government or for Mr. Chapman. Had the court declared a mistrial with respect to Mr. Wright rather than Mr. Chapman, there is no suggestion Mr. Wright willingly would have remained on the stand for cross-examination. Had Rule 410 not precluded Mr. Chapman's intended cross-examination of Mr. Wright, the fifth amendment privilege against self-incrimination likely would have done so. Mr. Chapman does not suggest that he would have been content with the striking of Mr. Wright's testimony and an admonition to the jury to disregard it. Mr. Wright had provided very strong testimony against Mr. Chapman.

Further, Mr. Wright had not renewed his severance motion. Had the court declared a mistrial with respect to Mr. Wright, neither consent to, nor manifest necessity for, the mistrial could be found. The double jeopardy clause on which Mr. Chapman now relies well might have barred reprosecution of Mr. Wright.

Accordingly, had the court excused Mr. Wright from trial rather than Mr. Chapman, a mistrial with respect to Mr. Chapman almost certainly would have ensued, and Mr. Wright's reprosecution would have been, at best, a chancy proposition. Under these circumstances, manifest necessity required the declaration of a mistrial with respect to Mr. Chapman.

For these reasons, the court concludes that the double jeopardy clause presents no bar to this trial. As in *United States v. Leppo*, 634 F.2d 101, the court finds that the defendant's motion to dismiss following the grant of a mistrial based on manifest necessity is frivolous, for the reasons stated in writing herein, and that any *Abney* appeal would not deprive this court of jurisdiction to proceed with trial. Accordingly, the court also denies the defendant's implied motion for a stay of proceedings pending appeal.