UNITED STATES of America, Plaintiff,

v.

James R. MARREN, Defendant.

Crim. No. 87–40045.

United States District Court,
S.D.Illinois,
Benton Division.

Aug. 29, 1989.

Michael C. Carr, Asst. U.S. Atty., for U.S.

Christopher Heid, Norris City, Ill., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on defendant Marren's Motion to Dismiss the indictment on the grounds that the double jeopardy provision of the fifth amendment would prohibit his trial. The Court severed defendant Marren from the *United States v. Canino, et al.*, CR 87–40045, trial and declared a mistrial after a hearing on the government's Motion for Disqualification and Severance revealed there was a reasonable possibility that Marren's attorney, Stephen Finta, committed specifically identifiable improprieties in furtherance of the conspiracy for which Marren was on trial, and that the likelihood of public suspicion outweighed the social interests that would be served by Finta's continued participation in the case. Marren essentially asserts in his motion that 1.) the government's disqualification motion was untimely; 2.) attorney Finta did not have sufficient time to prepare for the disqualification motion and the hearing on that motion; 3.) the "manifest necessity" doctrine did not compel a mistrial; and 4.) the Court misapplied the legal standard it chose when disqualifying Finta.

## FACTUAL BACKGROUND

On November 14, 1988, this Court heard argument on various motions pertaining to the trial of *United States v. Canino, et al.*, CR 87–40045. James Marren, who was represented by Stephen Finta, was one of five defendants facing trial on charges relating to a marijuana distribution conspiracy. A jury was selected on November 15, 1988, and sworn to try the issues in the case on November 16, 1988. Counsel made opening statements and the government's first witness, Charles Podesta, began his testimony at 10:30 a.m. on November 17, 1988. Podesta's testimony continued on

November 18, and the Court declared that a recess would be taken until November 29, 1988, due to the Thanksgiving holiday and prior Court commitments.

On November 29, 1988, the government filed a Motion to Disqualify Stephen J. Finta as attorney of record for defendant Marren and to sever Marren from the *Canino, et al.* trial. The government alleged in its motion that attorney Finta "knowingly and intentionally participated in activity that furthered the goals of the conspiracy." The government's motion also asserted that Finta's continued representation of Marren would erode public confidence in the integrity of the bar and the legal system. The Court immediately conducted an evidentiary hearing on the government's motion, without objection from Finta or Marren, and ruled that attorney Finta was disqualified from representing Marren. The Court thereafter declared a mistrial as to defendant Marren and severed his trial from that of his co-defendants. Marren subsequently filed a Motion to Dismiss Based Upon Double Jeopardy. The Court will address each argument raised in Marren's motion seriatim.

I. **The Government's Motion for Disqualification and Severance was Timely.**

Defendant Marren asserts that 1.) attorney Finta had an inadequate opportunity to research the legal issues implicated by the government's motion and insufficient time to procure witnesses for the evidentiary hearing, and 2.) the government is precluded from retrying Marren because it neglected to act on knowledge it possessed prior to the swearing of the jury.

A. *The Court was Unaware that Attorney Finta Desired a Continuance.*

The Court and defendant Marren apparently agree that "[i]n wikked haste is no profit." G. Chaucer, The Canterbury Tales, Melibee, 1. 2240. Nonetheless, the Court was unaware until now that attorney Finta and defendant Marren wished to continue the hearing on the government's motion. Finta did vaguely state that "I do not

have people here today" (Tr. 122) and that his "secretary [was] going through the files back in the Southern District [of Florida]." (Tr. 100), but Finta engaged in the following colloquy with the Court when he attempted to conclude the presentation of evidence:

FINTA: But having said that, unless your Honor desires to hear further testimony or facts under these circumstances, we would rest on that:

THE COURT: I'm willing to hear anything you want to present. I don't think it's for me to say, Mr. Finta, what I should hear or not hear. I think it's up to you. Do you have anything further to present to the Court?

(Tr. 122).

Contrary to defendant's assertion that the Court stymied Finta's ability to respond and present evidence, the Court encouraged Finta to introduce any evidence or testimony that would facilitate a fair ruling on the government's motion. At no time did the Court suggest that either the government or attorney Finta would have a limited opportunity to present evidence. If Finta had moved for a continuance to garner evidence and. relevant case law, the Court would have happily granted the motion. Finta's statements at the evidentiary hearing undermine defendant's present claim that the Court made a headlong decision to conduct a hearing on the government's unforeseen motion, leaving Finta at a disadvantage. Finta reacted to the government's allegations that he played a nefarious role in Ronald Ball's purchase of a stash house as follows:

I discussed these things in advance at length with Mr. Marren and with other people candidly. These things come as no surprise. We were ready to deal with them when they came up. They weren't earth shattering but we weren't prepared to deal with them necessarily today in terms of having witnesses here and having files here but it is something that we knew the possibility of these things coming up.

(Tr. 121).

Attorney Finta's anticipation of the disclosure of evidence suggesting that he was a

738

participant in the criminal activity for which his client was on trial contradicts his assertions that the Court conducted a peremptory hearing on charges he was unprepared to meet. Defendant's invocation of Local Rule 7, which sets forth the time limits for an adverse party to file a brief responding to dispositive civil motions and all post-trial motions, is of no avail in the context of a criminal trial. The Court is usually confronted with unexpected and often challenging motions in the midst of criminal trials; if defense counsel or the government requests a reasonable extension of time to marshal a response, the Court will always defer a ruling. Attorney Finta never requested a short continuance of the hearing. The Court, which was unfamiliar with the evidence and witnesses Finta believed would refute the government's evidence, was in no position to suggest to counsel what course of action he should take.

B. *The Government's Motion was not Untimely.*

■ Defendant asserts that the government is now precluded from retrying him because it failed to act on knowledge it possessed months before the *Canino, et al.* trial. Assistant United States Attorney ("AUSA") Michael Carr alleged at the hearing that he first knew of Finta's involvement in the *Canino, et al.* conspiracy on November 23, 1988. Defendant attempts to dispute the government's claim of belated knowledge by referring the Court to an F.B.I. 302 report of witness Robert Wood's statements that were transcribed on February 3, 1988. A "Steve Finta" is identified by Wood as a "front man for James Marren." Document No. 531, Exhibit A, at 9. The Court notes that Finta is mentioned in three sentences on page nine of a thirteen-page report. During the trials resulting from the government's investigation of the entire marijuana smuggling conspiracy, the Court allowed the government to introduce thousands of documents into evidence. Defendant has not identified other evidence in the government's possession that should

have alerted the government at an early stage of Finta's alleged wrongdoing. The government asserts that it could not be expected "to glean from this morass the slivers of information" [sic] implicating Finta. The Court does not find the government's failure to appreciate the significance of this discrete reference to a "Steve Finta" to be unreasonable. The Court observed at the hearing on the government's motion that

I have listened to it all day and I don't ascribe any bad motive to the government in the case, and I'm satisfied that a lot of this did come about at the last minute. I just take judicial notice of the fact that a trial brings on numerous last minute matters and things that have been brewing for months or maybe years will come to a head at the time of trial, and this is probably just another one; when you brief your witnesses and go over these things there is always last minute matters, Mr. Hersch, and you know that, if you are experienced trial lawyers. It happens in every case.

(Tr. 154).

Nothing in defendant's motion persuades the Court to alter its earlier finding that the government's motion was timely and brought in good faith. Obviously, the Court, defendant Marren, and undoubtedly the government regretted that the discovery of Finta's apparent involvement came about after jeopardy had attached. Ronald Ball testified that he had first informed AUSA Carr of Finta's role in the purchase of a stash house on Wednesday, November 23, 1988. (Tr. 57). The Court believes that the government was sufficiently diligent in presenting the evidence of Finta's complicity to the Court as soon as AUSA Carr was apprised of that fact.

II. The Court's Declaration of a Mistrial was Supported by "Manifest Necessity."[1]

■ The double jeopardy clause of the fifth amendment bars retrial unless the

1. The government's assertion that there is no manifest necessity requirement where the de-

fendant's conduct compels a court to declare a mistrial is inaccurate. A reviewing court's task

trial court's declaration of a mistrial was occasioned by "manifest necessity." *United States v. DiFrancesco,* 449 U.S. 117, 120, 101 S.Ct. 426, 428, 66 L.Ed.2d 328 (1980); *Arizona v. Washington,* 434 U.S. 497, 505–06, 98 S.Ct. 824, 830–31, 54 L.Ed.2d 717 (1978); *United States v. Perez,* 9 Wheat 579, 6 L.Ed. 165 (1824). Under the manifest necessity standard, a court may declare a mistrial only if a "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion) (quoting *Perez,* 9 Wheat at 580). Whether this standard has been met can only be determined on a case by case basis. *Illinois v. Somerville,* 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). A trial court, however, need not make an express finding of manifest necessity when granting a prosecutor's motion for mistrial over a defendant's objection. *Washington,* 434 U.S. at 516–17, 98 S.Ct. at 835–36. In all events, a court "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Jorn,* 400 U.S. at 486, 91 S.Ct. at 558.

■ The Court reiterates that it had no choice but to disqualify Finta and declare a mistrial as to defendant Marren. Had Attorney Finta not been disqualified, Marren would have had an opportunity to obtain a certain reversal on appeal due to Finta's conflict of interest. *See Government of Virgin Islands v. Zepp,* 748 F.2d 125, 136 (3d Cir.1984); *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984). In *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), the Supreme Court stated that

> where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice.

*Id.* 93 S.Ct. at 1074 (citing *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949)).

In the instant case, Finta would have had strong reason to proceed with care when cross-examining certain witnesses to prevent his own apparent involvement in the

always is to determine whether a trial court abused its discretion in finding manifest necessity. *See United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion); *Lovinger v. Circuit Court of the 19th Judicial Circuit,* 845 F.2d 739, 745 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988). The cases cited by the government do not support the proposition that "an exception to the manifest necessity doctrine arises where the declaration of mistrial was caused by the defendant's conduct." Document No. 561, Government's Response to Marren's Motion to Dismiss, at 7. In both *State v. Aguilar,* 478 S.W.2d 351 (Mo.1972), and *Barnett v. Florida,* 382 So.2d 412 (Fla.Dist.Ct.App.1980), the reviewing courts made explicit findings of manifest necessity supporting the trial courts' mistrial declarations. In *United States v. Willis,* 647 F.2d 54 (9th Cir.1981), the Ninth Circuit made no finding regarding manifest necessity, merely noting that express consideration of alternatives to mistrial is not required. *Id.* at 59. The Ninth Circuit likely gave such cursory con-

sideration to the defendant's double jeopardy claim because he had absconded to Mexico after the first day of his trial and was not apprehended until seven months later. *Id.* at 59 n. 3. The Ninth Circuit did not explicitly or implicitly propose that there are any exceptions to the manifest necessity requirement. The government has apparently confused the case law pertaining to a defendant's mistrial motion with that applicable when the government seeks a mistrial. When a defendant moves for a mistrial, there is a narrow exception to the rule that there is no double jeopardy bar to retrial. If governmental or judicial conduct is intended to goad a defendant into moving for a mistrial, the defendant may raise the bar of double jeopardy to a second trial after having successfully aborted the first on his own motion. *Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 2089–90, 72 L.Ed.2d 416 (1982); *Lovinger,* 845 F.2d at 743. There is no "reverse image" case law supporting the government's argument that a prosecutor's motion for mistrial prompted by a defendant's misconduct can be granted absent manifest necessity.

conspiracy from coming to light. Finta conceded that he had discussed the possibility of allegations surfacing that his actions furthered the conspiracy for which his client was on trial. (Tr. 121). While counsel may have quelled his client's apprehensions on this score, the Court was not satisfied. Such testimony would not redound to Marren's benefit nor would a reviewing court likely find that Finta conducted a vigorous and competent defense of his client while tailoring his examination of witnesses to protect himself. (*See* Tr. 135). Defendant Marcum's post-hearing motion in limine to prohibit the government from eliciting any testimony regarding Finta's alleged misdeeds supports the Court's finding that all defendants would be prejudiced if the Court did not declare a mistrial as to Marren and sever him from the case. (Tr. 168). Marren's present claim that it was unlikely that witnesses would testify regarding Finta had Marren been tried with his co-defendants is without merit. The government agreed to comply with Marcum's motion in limine only after a mistrial as to Marren was declared and Marren was severed from the case. (Tr. 168). Finta's alleged role as "front man" for Marren would ineluctably have come to the fore had Marren remained in the case. The testimony of the government's witnesses revealed that Finta's role in Marren's activities was hardly subtle.

Contrary to defendant's assertions, the Court thoroughly considered the double jeopardy implications of and alternatives to the declaration of a mistrial. (*See* Tr. 126, 146–47; 137–69). The Court noted that

> in analyzing the situation, it appears to me that the defendant Marren would be prejudiced if the Court went on without the appointment of counsel or even with appointment of counsel because of the mass of material it would take to prepare this case. We are into the trial and I doubt even if a delay of a month would even allow an experienced counsel to be prepared for the case.

(Tr. 156). The entire record reflects that the Court gave careful consideration to alternatives to a mistrial and elicited and took into account the suggestions of counsel and defendant Marren.

In *United States v. Kwang Fu Peng*, 766 F.2d 82 (2d Cir.1985), which the Court views as a case involving a situation virtually identical to the instant case, the Second Circuit affirmed the trial court's decision to declare a mistrial after disqualifying the defendant's attorney. The disqualification motion was raised by the trial court *sua sponte* in the midst of defense counsel's cross-examination of the government's first witness. After disqualifying the defendant's attorney, the trial court *sua sponte* declared a mistrial over the defendant's objection and with the government's acquiescence. *Id.* at 84–85. The trial court relied on two grounds to support a finding of manifest necessity. First, was " 'the effect on the weight the jury will give to [defense counsel's] opening statement and examination [of the government's witness] once [defense counsel] is substituted and he or a member of his firm takes the stand.' " *Id.* at 85. Second, the trial court found that the amount of time substitute counsel would need to prepare mandated that the court declare a mistrial. *Id.* As in the instant case, defense counsel in *Kwang Fu Peng* conceded that the trial court's disqualification order, if proper, required a mistrial. *Id.* at 87–88. *See* Document No. 531, Motion to Dismiss Based Upon Double Jeopardy, at 45 ("[G]ranting of the motion to disqualify would not only deprive Mr. Marren of his Sixth Amendment right to counsel of his choice, but also would necessarily require a mistrial. . . .").

In *United States v. Arrington*, 867 F.2d 122 (2d Cir.1989), *petition for cert. filed sub nom., Davis v. United States*, 57 U.S. L.W. 3828 (U.S. June 20, 1989) (No. 88–1997), the Second Circuit again approved a trial court's decision to disqualify defense counsel when the government alleged on the sixth day of trial that one defendant's attorney had threatened a government witness, coercing him to sign an affidavit recanting his earlier statements to government agents. The trial court found that suggestions of other courses of action, such as an adjournment of the trial to allow appointment of new counsel, were

unworkable. After disqualifying the accused defense attorney, the trial court declared mistrials as to all defendants. *Id.* at 125. The Second Circuit agreed that the defense attorney in question would have become a sworn or unsworn witness once any testimony implicating him was admitted. The Court further noted that " '[a] great deal of discretion [is] vested in the trial judge, who is usually best situated to determine the degree of necessity for the declaration of a mistrial.' *Dunkerley v. Hogan,* 579 F.2d 141, 145 (2d Cir.1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). The trial judge's evaluation is entitled to 'the highest degree of respect.' " *Id.* (quoting *Arizona v. Washington,* 434 U.S. 497, 511, 98 S.Ct. 824, 833, 54 L.Ed.2d 717 (1978)).

Both the Fifth and Ninth Circuits have affirmed a district court's declaration of mistrial under circumstances similar to that which confronted this Court. In *United States v. Wayman,* 510 F.2d 1020 (5th Cir.), *cert. denied,* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975), the Fifth Circuit found that the trial court's decision to declare a mistrial after three weeks of trial when defense counsel was injured in an automobile accident was supported by manifest necessity. *Id.* at 1028. In reaching this determination, the Fifth Circuit found the Supreme Court's explanation in *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), of its earlier dicta that "unforeseeable circumstances" may justify a mistrial to be instructive. *Id.* The Court stated that

> Where for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objections, and he may be retried consistently with the Fifth Amendment.

367 U.S. at 368, 81 S.Ct. at 1526. In *United States v. Williams,* 717 F.2d 473 (9th Cir.1983), the Ninth Circuit found that the double jeopardy clause did not bar a defendant's retrial after the declaration of a mistrial resulting from the trial court's decision to grant defense counsel's motion to withdraw. *Id.* at 475. As in the instant case, the trial court found manifest necessity for a mistrial due to the lengthy delay that would be required in order for new counsel to prepare for a complex criminal case. *Id.* Moreover, the Ninth Circuit found that there was a great risk of juror prejudice resulting from extensive media coverage of the case. *Id.* An equally substantial risk of juror prejudice due to widespread media coverage would arise against all defendants, and Marren in particular, had this Court continued the trial for the lengthy period of time necessary for a new counsel's preparation for this complex case.

The Court did not lightly undertake its determination to abort the criminal proceeding against Marren. Rather, the Court found a peril of great prejudice to Marren if any other course of action was taken. Furthermore, had the Court allowed Finta to continue to represent Marren, concomitantly imposing a makeshift order suppressing testimony implicating Finta, "the ends of public justice" would be frustrated because reversal on appeal would be a certainty if the government prevailed. *See Somerville,* 410 U.S. at 464, 93 S.Ct. at 1070–71.

### III. The Court's Disqualification of Attorney Finta was Proper.

■ Defendant Marren asserts that this Court erred in two respects when it disqualified Finta. First, the Court applied the incorrect legal standard. Second, the Court misapplied the test it chose. Defendant is wrong on both scores.

In *United States v. Levine,* 794 F.2d 1203 (7th Cir.1986), the Seventh Circuit examined defendant Levine's inadequate assistance of counsel claim based on attorney conflict of interest. In assessing Levine's claim, the court identified the two bases for attorney disqualification: conflict of interest, and threats to the integrity of the judicial system. *Id.* at 1204–07. This Court invoked the second basis for Finta's disqualification, finding that Finta's continued representation of Marren would create a serious risk of undermining public confi-

dence in the integrity of the legal system. This Court applied the following two-part test articulated by the Eleventh Circuit in *United States v. Hobson*, 672 F.2d 825 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982):

> First, although there need not be proof of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case."

*Id.* at 828. *See also United States v. Snyder*, 707 F.2d 139, 145 (5th Cir.1983). The *Hobson* court set forth the above test for disqualification of an attorney under Canon 9 of the A.B.A. Code of Professional Responsibility, which provides that an attorney "should avoid even the appearance of impropriety." The trial court in *Hobson* disqualified the defendant's attorney after the government proffered testimony indicating that the attorney was aware of the drug smuggling scheme for which his client was being tried and had assisted a government witness in securing employment off-loading marijuana. 672 F.2d at 826.

In the instant case, Ronald Ball testified that attorney Finta was present on "numerous occasions" between the years 1976 and 1980 while Ball and James Marren discussed their marijuana importation business. (Tr. 24–66). Ball stated that he had "no doubt that [Finta] was knowledgeable about the topic of the conversations." (Tr. 25). Ball also testified that Finta represented him when he purchased a stash house for marijuana distributed by the *Canino, et al.* conspiracy. (Tr. 26–61). Ball testified that Finta knew that Ball was purchasing the house as a stash house (Tr. 26, 58), and had dissuaded Ball from paying cash for the house, suggesting a mortgage purchase instead, to minimize losses in the event that Ball was arrested and the house forfeited. (Tr. 26–27; 43–44; 59–61).

A second government witness, Robert Wood, testified that Finta operated as James Marren's attorney and "front man," furthering Marren's marijuana smuggling operation with his legal skills. Wood testified that Finta arranged Marren's purchase of an airplane from Wood to smuggle marijuana. (Tr. 65–70; 74–75). Finta allegedly delivered the purchase price of approximately $30,000.00 cash to Wood in a paper bag. (Tr. 67). Wood alleged that Finta later circumvented a F.A.A. seizure of the plane by preparing phony backdated liens in Wood's favor. (Tr. 71–73). Wood testified that Finta was knowledgeable about the marijuana conspiracy in which Wood and Marren participated and that he would occasionally inquire as to whether certain operations in the smuggling venture were successful. (Tr. 73).

The Fifth Circuit has noted that possible attorney improprieties, such as those attributed to Finta, are beyond a defendant's right to waive because they "involve[ ]" the public perception of the lawyer and the legal system rather than some difficulty in the attorney's effective representation of "[the defendant]." *Snyder*, 707 F.2d at 145 (quoting *Hobson*, 672 F.2d at 829). Finta's continued representation of Marren would have aroused public suspicion about the integrity of the Court and its officers, and have invited future attacks regarding the fairness of the proceedings or the adequacy of Marren's waiver. It is also undeniable that Finta would be a fact witness to several crucial events that occurred during the course of the conspiracy for which his client was on trial. The testimony of Ball and Wood would immediately alert the jury to apparent compelling improprieties and attorney-client conflict in the case.

Marren's assertion that the Court should have applied the test of "manifest necessity" to the decision to disqualify Finta is unsupported by case law. Marren's suggestion that a different attorney disqualification standard applies once jeopardy has attached is contradicted by *United States v. Kwang Fu Peng*, 766 F.2d 82 (2d Cir. 1985), and *United States v. Williams*, 717 F.2d 473 (9th Cir.1983). In *Kwang Fu Peng*, the Second Circuit reviewed a trial

 

court's decision to declare a mistrial and to disqualify the defendant's attorney under DR 5–102 of the New York Code of Professional Responsibility, which requires an attorney to withdraw if he "learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client." The Second Circuit evaluated the trial court's actions under two separate standards: 1.) the disqualification was controlled by the balancing test set forth in *United States v. Cunningham*, 672 F.2d 1064 (2d Cir.1982), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984); and 2.) the mistrial declaration was governed by the manifest necessity doctrine. 766 F.2d at 84–85. The Second Circuit affirmed the trial court's disqualification ruling and the mistrial declaration. In *Williams*, the defendant argued that there was no manifest necessity to declare a mistrial because there was no manifest necessity to grant his attorney's motion to withdraw after jeopardy had attached. The Ninth Circuit disagreed, finding that a trial court's decision to release counsel is always discretionary. The Ninth Circuit ruled that the *effect* of an attorney's departure from a case on manifest necessity is merely one of the factors to be considered by the trial court. *Id.* at 475. This Court carefully considered the effect of Finta's disqualification, as well as other factors, when it found manifest necessity for a mistrial. (*See* Tr. 156).

Marren's assertion that the Court misapplied the *Hobson* test by giving short shrift to the second prong of the test is belied by the record as a whole. The Court accurately quoted the test it was applying when considering Finta's disqualification, and the record fully reflects the Court's belief that Finta's continued participation in the case would result in a trial vulnerable to attacks on the integrity of the Court, the trial proceedings, and attorney Finta. The likely public perception of an attorney who was allegedly involved in the very conspiracy for which his client is on trial is self-evident.

Finally, the Court rejects defendant's picayune argument that Finta was not a member of the bar in the Southern District

of Illinois and was therefore not subject to this district's disciplinary procedures. The Court conducted a hearing on a motion to disqualify Finta, not to discipline him. The government and the Court merely invoked Local Rule 33 Disciplinary Rule IV to inform attorney Finta of which Code of Professional Responsibility applied in this district. Disciplinary Rule IV provides, in pertinent part, that "[t]he Code of Professional Responsibility adopted by this Court is the Code of Professional Responsibility adopted by the highest court of [Illinois]." *See* Ill.Rev.Stat. ch. 110A, Canon 9 (1987). Canon 9 of the Illinois Code of Professional Responsibility is identical in all respects to the Canon 9 attorney Finta would be subject to in Florida.

Accordingly, defendant Marren's Motion to Dismiss Based Upon Double Jeopardy (Document No. 531) is hereby DENIED.

IT IS SO ORDERED.